UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NORMAN A. THOMAS,

      Plaintiff

520 Atlantic Ave
York PA 17404
    v.  717-676-7614

DISTRICT OF COLUMBIA GOVERNMENT
John A. Wilson Building
1350 Pennsylvania, N.W.
Washington, D.C. 20004,

      Defendant


D.C. BOARD OF PAROLE,
633 Indiana Avenue, N.W.
Washington, D.C. 20001,

      Defendant


D.C. DEPARMTENT OF CORRECTIONS,
1923 Vermont Avenue, N.W.
Washington, D.C. 20001,

      Defendant


U.S. CITIZENSHIP AND IMMIGRATION SERVICES,
DEPARTMENT OF HOMELAND SECURITY
U.S. DEPARTMENT OF JUSTICE,
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

      Defendant


STATE OF NEW YORK
NEW YORK CITY GOVERNMENT,
633 3rd Avenue, 38th FLoor,
New York, N.Y. 10017

**FILED**

JUL **1 9** 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Case: 1:07-cv-01286
Assigned To : Kennedy, Henry H.
Assign. Date : 7/19/2007
Description: CIVIL RIGHTS-NON EMPLOY.

    This is a Civil Action authorized by the Administrative

Procedure Act, 5 U.S.C. § 706, the District of Columbia

**RECEIVED**

JUN **2 8** 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Administrative Procedures Act, Title 1, § 1501 Et. seq. D.C.C.E.; Title 42 U.S.C. § 1983, 28 U.S.C. §§§ 1331, 1332, & 1391(e); the Fifth Amendment to the United States Constitution and the "Accardi Doctrine." Plaintiff also seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 & 2202.

## COMPLAINT

This is a "Civil Action Complaint" against the District of Columbia, D.C. Board of Parole, D.C. Department of Corrections, Department of Homeland Security and the State of New York for violating plaintiff's constitutional rights, the APA, the D.C. Administrative Procedures Act, and the Accardi Doctrine.

## STATEMENT OF THE CASE

In October of 1988, plaintiff was arrested and charged in the District of Columbia for "Possession of a Controlled Substance." On February 10, 1989, plaintiff was sentenced to a term of twenty (20) months to five (5) years imprisonment in the Superior Court of the District of Columbia. After serving the minimum term of twenty (20) months, plaintiff was released on parole in 1991. Plaintiff's "Full Term Expiration Date" on this sentence was October 14, 1993. Prior to the expiration of plaintiff's D.C. sentence, plaintiff was arrested in the State of Pennsylvania in 1991, and was charged with "Possession of Crack Cocaine." At the time of plaintiff's arrest in the State of Pennsylvania, the Immigration & Naturalization Service placed a detainer on plaintiff, and this was the only law enforcement agency that had placed a

-2-

detainer against plaintiff 1991 or any other time while plaintiff was in the custody of the Pennsylvania authorities. After a jury trial, plaintiff was found guilty and sentenced to five (5) years imprisonment in the State of Pennsylvania.

In 1993, plaintiff was granted parole by the Pennsylvania Parole Board on his five (5) year sentence, to be paroled to the detaining authorities which were the "Immigration & Naturalization Service (now the Department of Homeland Security). Before plaintiff was released to INS, the Pennsylvania Department of Corrections notified both the D.C. Board of Parole and the D.C. Department of Corrections to ascertain whether plaintiff was wanted by either agency, and if plaintiff was wanted, did they want to take custody of plaintiff before plaintiff was released to the Immigration & Naturalization Service? Both the D.C. Department of Corrections and the D.C. Board of Parole informed the Pennsylvania Dept. of Corrections authorities that plaintiff was not wanted by either of their agencies and that they were free to release plaintiff to the custody of the Immigration & Naturalization Service. Based on this information, the Pennsylvania Dept. of Corrections released plaintiff to the Immigration & Naturalization Service.

After plaintiff was taken into custody of the Immigration & Naturalization Service, plaintiff appeared before a Immigration Judge who set bond in plaintiff case, and plaintiff posted bond, but before plaintiff was released by the Immigration authorities in 1993, the Immigration authorities ran a NCIC check on plaintiff to determine whether plaintiff was wanted by any local, state or

-3-

federal law enforcement agencies.  At the conclusion of Immigration's
NCIC check, it was determined that plaintiff was not wanted by any
local, state or federal law enforcement agencies and that there
were no outstanding warrants pending against plaintiff, so plain-
tiff was released from the custody of the Immigration & Naturaliz-
ation Service on bond, and resided in the State of New York.

On August 7, 1995, plaintiff was involved in a car accident
in New York City.  After the police arrived on the scene and
placed plaintiff's name in the computer to determine plaintiff's
driving record, the officer came back to plaintiff and informed
plaintiff that there was a outstanding warrant for his arrest in
the District of Columbia.  Plaintiff asked the officer what
specificially was it for, and the officer stated that he did not
know.  After plaintiff was arrested and transferred to New York
City jail, he asked the jail personnel what was he wanted for in
the District of Columbia, they also could not answer the question.

Plaintiff asserts that defendant State of New York violated
his constitutional rights by not affording plaintiff a "Extradition
Hearing," instead of plaintiff receiving a "Extradition Hearing"
in the State of New York, the New York Authorities allowed plain-
tiff to be taken back to the District of Columbia.  Had plaintiff
been given and afforded a "Extradition Hearing" by the State of
New York, plaintiff could have found out what he was wanted for
by the District of Columbia authorities and could have contested
the District of Columbia warrant by making them "Show Cause"
specifically what plaintiff was wanted for and produce document-

-4-

ation to support the outstanding warrant.  Plaintiff was never aforded these rights, and plaintiff contends that had the defendant State of New York afforded plaintiff this right, he would not have been brought back to the District of Columbia, because at the **"Extradition Hearing"** it would have been proven that plaintiff was no longer on parole as claimed by the District of Columbia authorities.

Once back in the District of Columbia, plaintiff was informed by the D.C. authorities that he had violated his parole, and that the parole violations stem from 1991, and that they, the D.C. Board of Parole had issued a parole violator warrant in 1991.

Plaintiff contested these facts with defendant D.C. Board of Parole authorities based on the fact that the Pennsylvania Department of Corrections had notified both the D.C. Board of Parole and the D.C. Department of Corrections ascertaining whether plaintiff was wanted by either of them, and they informed the Pennsylvania Department of Corrections authorities that plaintiff was not wanted and that plaintiff could be released to the detaining authorities which were the Immigration & Naturalization Service. After plaintiff was in the custody of the Immigration & Naturalization Service, they made certain that plaintiff had no outstanding warrants pending against plaintiff before they released plaintiff on bond, so there was no outstanding warrant against plaintiff and his D.C. sentence had expired.  Regardless of these facts, the D.C. Board of Parole violated a defunct sentence and made plaintiff serve additional time on this defunct expired sentence imposed on February 10, 1989.

-5-

## ARGUMENT

On April 11, 1987, the District of Columbia enacted into law, the "Good Time Credits Act," D.C. Code § 24-431, which provided that every person that was sentenced pursuant to the District of Columbia Code shall be given credit on the maximum and minimum term of imprisonment for time spent on parole as a result of the ofense for which the sentence was imposed.

On February 19, 1988, the D.C. Department of Corrections issued a regulation, 28 D.C.M.R. § 601.7, which stated that "Revocation of parole shall not result in a loss of credit, for the time spent on parole, toward service of the sentence which parole was granted. See Noble v. U.S. Parole Com'n, 887 F. Supp. at 14 (D.D.C 1995).

Plaintiff asserts that because of the enactment of the **Good Time Credits Act, D.C. Code** § 24-431 and 28 D.C.M.R. § 601.7," plaintiff was entitled for credit for all time that he had spent on parole once he was paroled in 1991, and because of this, plaintiff's twenty (20) months to five (5) year sentence had expired in its entirety on October 14, 1993, and based on these facts, the District of Columbia, D.C. Board of Parole, or the D.C. Department of Corrections had no reasons for issuing any warrants to retake plaintiff into custody on August 7, 1995 because plaintiff's sentence had already expired.

Plaintiff asserts that it is because of this illegal detention in August of 1995 until plaintiff was released from the District

-6-

of Columbia authorities that has triggered the deportation proceed-
ings by the Immigration & Naturalization Service.  Plaintiff
asserts that the Immigration & Naturalization Service is well aware
of these facts but have ignored them.  Had the Immigration &
Naturalization Service acknowledged these facts, plaintiff would
be entitled to a 212(c) waiver of deportation.

## VIOLATION OF THE ACCARDI DOCTRINE BY THE NAMED DEFENDANTS

The "Accardi Doctrine," which traces its roots to the Supreme
Court decision of United States ex rel. Accardi v. Shaughnessy,
347 U.S.  260, 74 S.ct. 499, 98 L.Ed. 681 (1954), has been recogni-
zed in federal and some state jurisdictions.  Accardi, however,
involved much more than mere technical violations of an internal
agency regulation pertaining to the orderly transaction of agency
business.  It involved an attempt to bypass three levels of review
required by the agency's regulations.

In Accardi v. Shaughnessy, supra, 347 U.S. at 268, 74 S.Ct.
at 540, the Supreme Court of the United States held that an admin-
istrative decision is subject to invalidation because of the ageny's
"failure to exercise" it own discretion[,] contrary to existing
valid regulations.  Subsequently, in a series of cases, the Supreme
Court, relying on "Accardi" has recognized  a rule of federal
administrative law that, with some exceptions, an administrative
agency is required to follow its own procedures or regulations.
See, e.g., United States v. Caceres, 440 U.S. 741, 751 n. 14, 99
S.Ct. 1465, 1471, 59 L.Ed.2d 733 (1979).

-7-

In <u>United States</u> v. <u>Heffner</u>, 420 F.2d 809, 811 (4th Cir. 1969), the United States Court of Appeals for the Fourth Circuit citing "<u>Accardi</u>," said "[a]n agency of the government must scrupulously observe rules, regulations, or procedures which it has established. When it fails to do so, its action <u>cannot stand and courts will strike it down</u>!"

In <u>Dugan</u> v. <u>Delaware Harness Racing Commission</u>, 752 A.2d 529, 531 (Del. 2000), the Supreme Court of Delaware, when discussing the Harness Racing Commission Rule stated that:

> "We assume that the Commission was not required by either the United States Constitution or by statute to adopt a prima facie rule of evidence that was conditioned on establishing certain other procedures. Nevertheless, the United States Supreme Court has held that once an agency does adopt such regulations, "it does not necessarily follow . . . that the agency has no duty to obey them. "Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures." If an agency rule is designed 'to afford . . . due process of law by providing safeguards against essentially unfair procedures,' the action which results from the violation of that rule is invalid." (emphasis supplied)

In <u>United States</u> v. <u>Lee</u>, 106 U.S. 196, 220-21, 1 S.Ct. 240, (1882), the Supreme Court forcefully expounded upon the fundamental character of the rule of law, and indicated that the "Due Process Clause" guarantees a right of judicial review to enforce the rule of law, at least for violations of law that lead to the deprivation of life, liberty or property. According to the Court:

> "No man in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All the officers of the government from the highest to the lowest, are creatures of the law and are bound to obey it. It is the only supreme power in our system of government and every man who by accepting office participates in its functions is only the more strongly bound to submit to that

-8-

supremacy, and to observe the limitations which it imposes upon the exercise of the authority which it gives."

In each case, the Court inquired into the purpose of the regulations that the agency allegedly violated, and found that the party relying on the "Accardi Doctrine" was in the class of persons for whose benefit the regulations had been promulgated. See Yellins v. United States, 374 U.S. 109, 83 S.Ct. 1828, 10 L.Ed.2d 778 (1963); Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968 (1959); Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152 (1957).

The purpose for inquiring into the goal of the regulations appears to have been to support a finding that the regulation conferred a procedural "right" on the individual that had been denied by the violation. See also Mazaleski, 562 F.2d at 719. The Court explicitly or implicitly found that the individual raising the procedural non-compliance claim had been at least arguably harmed by the violation. The Court's analysis also suggests that the doctrine functions to ensure equal treatment by government bodies, particularly where the agency has extended a procedural protection on a class of person. For this reason, the Court, on occasion, stated that strict compliance with the regulation was required. "See Yellinn, 374 U.S. at 124, 83 S.Ct. 1828 (committee need be "equally meticulous in obeying its own rules")' Vitarelli, 359 U.S. at 540, 79 S.Ct. 968 (scrupulous observance of departmental procedural safeguards is clearly of particular importance").

The federal Constitution embraces and embodies the cardinal principle taht this is a nation subject to the rule of law, and as such, agents of the government are bound to follow the law.

-9-

United States v. Lee, 106 U.S. 196, 2202, 1 S.Ct. 240, 27 L.Ed. 171 (1882); cf. Reuters Ltd. v. Federal Communications Comm., 781 F.2d 946, 947 (D.C. Cir. 1986) (Accardi doctrine is a "venerable" precept "which lies at the foundation of the modern administrative state"). Plausibly, the Constitution's rule-of-law requirement could be derived from Article II's admonition that the President **shall take Care that the Laws be faithfully executed.**" But history, precedent, and application of the doctrine to all branches of government demonstrates that it is the fundamental concept of due process expressed in the Fifth and Fourteenth Amendments that gives life to the "Accardi Doctrine."

Holding the requirement that government actors be bound by the law to be anything less than constitutional would be unsustainable. For, were the rule of law simply a subconstitutional rule of convenience, it would be within the power of Congress to enact a statute freeing those who administer the law from any obligation to adhere to it. Rather, the rule-of-law requirement implicit in the notion of due process, although added to the Constitution in the Fifth and Fourteenth Amendments, reflects a founding assumption or first principle. Our nation would have no need for a Constitution to secure individual liberty if the Government were free to disregard its mandates. It is because governmental actors are bound by the law that the Constitution serves to limit the power of government. It is because public officials are bound by law that individuals such as plaintiff may seek review and relief in the courts. The founding principle that public officials must

-10-

obey the law is a necessary antecedent for a claim against such an official for violation of law.  But this general principle only lays the groundwork for the enforcement of the more specific laws that prescribe rules of conduct.

While it can hardly be gainsaid that public officials must obey the law, in the administrative context, a more nuanced question arises as to what constitutes "law" binding on the agencies.  See Lying v. Payne, 476 U.S. 926, 937, 106 S.Ct. 2333 (1986).  The question is not posed in its broadest, jurisprudential sense.  Rather the question is to what sources must a court look to determine whether a government actor is prohibited from taking the action or inaction alleged to have been wrongfully done or not done.

Form should be respected.  Laws enacted through formal processes clearly are binding.  Thus the Constitution, statutes, and "legislative rules" that have been promulgated after public notice and comment are binding.:

> "Simply stated, rules are rules, and fidelity to the rules which have been properly promulgated, consistent with applicable statutory requirements, is required of those to whom Congress has entrusted the regulatory missions of modern life."

But determination of the "law" that binds agencies under the "Accardi Doctrine" goes beyond form and looks to substance.

The "Accardi Doctrine's" rule-of-law principle is unyielding,

-11-

but its application is not.  In other words, adherence to the rule of law requires courts to declare an agency's violation of law, even a binding, though gratutious, procedural regulation, to be just that--a violation of law.  Cf. Korematsu v. United States, 323 U.S. 214, 244, 65 S.Ct. 193, 89 L.Ed. 194 (1945).  But the precedent demonstrates that the **"Accardi Doctrine"** does more than bind public officials to **"law."**  The doctrine also served as the Supreme Court's basis for judicial review to enforce an agency's obligations under its own laws.  See, e.g., Vitarelli, 359 U.S. at 539.

It is this strict interpretation of **"Accardi"** that has been adopted and applied by the District of Columbia Circuit in its case to date.  See Wilkinson v. Legal Services Corporation, 27 F.Supp.2d 32; Vanover v. Hantman, 77 F.Supp.2d at 103 (D.D.C. 1999).  As indicated, the District of Columbia Circuit has held that when a regulation "affects individual rights and obligations, or confers "important procedural benefits upon individuals," then **"Accardi"** is applicable and there is a per se violation when an agency fails to adhere to such regulations.

In sum, the following syllogism emerges: The Due Process Clause establishes that public officials are bound to follow the law.  AGency regulations intended to be binding are law--or, if quali- fication need be made, have the force and effect of law as applied to theagency.  Therefore, the Due Process Clause requires that agency officials follow their own rules, even those promulgated gratuitiously.  See Service, 354 U.S. at 388, 77 S.Ct. 1152.

-12-

The District of Columbia Government had enacted on April 11, 1987, the "Good Time Credits Act, D.C. Code § 24-431(a)" which granted prisoners such as plaintiff with credit for time spent on parole. Section 24-431(a) reads in pertinent part:

> "Every person shall be given credit on the maximum and the minimum term of imprisonment for time spent in custody or on parole as a result of the offense for which the sentence was imposed. When entering the final order in any case, the court shall provide that the person be given credit for the time spent in custody or on parole as a result of the offense for which sentence was imposed."

On February 19, 1988, the D.C. Department of Corrections enacted a regulation, 28 D.C.M.R. § 601.7, which stated that:

> "Revocation of parole shall not result in a loss of credit, for the time spent on parole, toward service of the sentence which parole was granted."

28 D.C.M.R. § 601.7 expressly authorized the D.C. Board of Parole and the D.C. Department of Corrections to credit plaintiff with all time he spent on parole in reference to plaintiff's twenty (20) months to five (5) year sentence that was imposed on February 10, 1989 in the Superior Court of the District of Columbia.

Based on the enactment of both the "Good Time Credits Act, D.C. Code § 24-431(a), and 28 D.C.M.R. § 601.7," there is no excuse that defendants can offer nor can they justify this blatant violation of having plaintiff arrested on August 7, 1995. Clearly, it appears that under the reasoning of the cases cited above, an agency's (D.C. Department of Corrections & the D.C. Board of Parole) failure to comply with its own rules, especially where those rules affect fundamental rights guaranteed by the Constitution or a

-13-

statute, mandates the invalidation of the agency action by the court under a **per se rule**. Iacaboni v. U.S., 251 F.Supp.2d at 1036.

Even when a federal court determines that an agency decision violated the law, ordinarily the remedy is to order the agency to reconsider its decision applying the correct standard or follow the proper procedures. See e.g., Downey, 100 F.3d at 671; Rizzo v. Armstrong, 921 F.2d 855, 861 (9th Cir. 1990). However, that is not a satisfactory remedy under the unique facts of this case.

First, since plaintiff's rights to an **"Extradition Hearing"** in 1995 were violated by defendant the State of New York, by not affording plaintiff a hearing to contest the **"invalid, bogus parole warrant"** that had allegedly been issued by defendant D.C. Board of Parole, and turning plaintiff over to the District of Columbia authorities.

Second, since it is undisputed that the District of Columbia Government had enacted into law the **"Good Time Credits Act, D.C. Code § 24-431(a)**, and the D.C. Department of Corrections had enacted **"28 D.C.M.R. § 601.7"** which allowed plaintiff to automatically receive credit for all time spent on parole, that plaintiff's twenty (20) months to five (5) year sentence that was imposed on February 10, 1989 had expired on October 14, 1993

Third, even when plaintiff was returned to the custody of the D.C. Board of Parole, D.C. Department of Corrections, they failed to compute plaintiff's sentence applying the **"Good Time Credits Act,"** thus keeping plaintiff incarcerated on an expired sentence.

-14-

Fourth, since defendants D.C. Board of Parole & D.C. Depart-
ment of Corrections failed to compute plaintiff's sentence correct-
ly in accordance with the **"Good Time Credits Act, D.C. Code § 24-
431(a), and 28 D.C.M.R. § 601.7,** they have allowed defendant
Department of Homeland Security to have grounds for denying plain-
tiff's request for a 212(c) **"Waiver of Deportation,"** because the
time that defendants D.C. Board of Parole & D.C. Department of
Corrections made plaintiff spend incarcerated on the twenty (20)
months to five (5) year sentence that had expired on October 14,
1993 additionally, put plaintiff at the five (5) year mark which
qualified plaintiff for deportation and denial of a **"212(c) Waiver
of Deportation."**

Unlike most decisions committed to the D.C. Department of
Corrections or the D.C. Board of Parole, this decision has only
two possible answers, and the relevant factors are well defined.
This is not a decision that requires the agency's professional
judgment and discretion.  Defendants D.C. Board of Parole & D.C.
Department of Corrections have failed to comply with their own
rules and regulations by illegally detaining plaintiff and making
plaintiff serve additional time on his expired twenty (20) months
to five (5) year sentence that was imposed on February 10, 1989,
in the Superior Court of the District of Columbia, failing to
compute plaintiff's twenty (20) months to five (5) year sentence
in accordance with the **"D.C. Good Time Credtis Act, and 28 D.C.M.R.
§ 601.7,** and because of this, have denied plaintiff his fundamental
rights as guaranteed by the Fifth Amendment to the Constitution

-15-

Due Process Clause, which deprived plaintiff the right of obtaining a "212(c) Waiver of Deportation."

## RELIEF SOUGHT

Plaintiff requests that this honorable court enter a "Declaratory Judgment" against the defendants named herein that:

1.  That defendant State of New York violated plaintiff's Constitutional rights to Due Process Rights to a "Extradition Hearing" in 1995, preventing plaintiff from contesting the alleged D.C. Parole Violator Warrant issued by the D.C. Board of Parole and further releasing plaintiff into the custody of the District of Columbia authorities without ever affording plaintiff a hearing;

2.  That defendants District of Columbia Government, D.C. Board of Parole and the D.C. Department of Corrections all violated the "Accardi Doctrine, the District of Columbia Administrative Procedure Act, the "Good Time Credits Act, 28 D.C.M.R. § 601.7, and plaintiff's constitutional rights pursuant to the Fifth Amendment;

3.  That defendants D.C. Board of Parole, and the D.C. Department of Corrections failed to compute plaintiff's twenty (20) months to five (5) year sentence correctly in accordance with the "Good Time Credits Act, and 28 D.C.MR. § 601.7, and illegally reincarcerated plaintiff on August 7, 1995, making plaintiff serve additional time on a sentence that had legally expired on October 14, 1993 in violation of plaintiff's constitutional rights;

4.  That defendants D.C. Board of Parole and the D.C. Department

-16-

of Corrections illegally reincarcerating plaintiff on an expired

D.C. Code sentence that was imposed in the Superior Court of the

District of Columbia on February 10, 1989 making plaintiff a

"Deportable Alien," preventing plaintiff from being considered for

a **"212(c) Waiver of Deportation;"**

5.  That defendants D.C. Board of Parole & the D.C. Dept. of Correct-

ions should never have had plaintiff re-arrested on his twenty

(20) months to five (5) year because they lacked jurisdiction over

plaintiff, as plaintiff was no longer under their custody and care

once plaintiff's sentence expired on October 14, 1993;

6.  That defendant Department of Homeland Security's use of the

additional time that defendants D.C. Board of Parole and D.C. Dept.

of Corrections illegally reincarcerated plaintiff from August 7,

1995 until his release as grounds for denying plaintiff a **"212(c)**

**Waiver of Deportation"** violates the **"Accardi Doctrine,"** the APA,

and plaintiff's constitutional rights to "Due Process;" and

7.  Plaintiff seeks a "Preliminary Injunction and a Temporary

Restraining Order" be issued against defendant Department of Homeland

Security which enjoins them, their agents, officers and employees

from considering any time that plaintiff spent in prison when

plaintiff had been illegally reincarcerated by defendants D.C.

Department of Corrections and the D.C. Board of Parole from August

7, 1995 until plaintiff's release from custody, and that they be

further enjoined from deporting plaintiff until this case can be

fully adjudicated on and the defendants be made to prove beyond a

-17-

reasonable doubt that plaintiff is a deportable alien and that plaintiff is not entitled to a **"212(c) Waiver of Deportation."**

Respectfully Submitted,

Norman A. Thomas
520 Atlantic Avenue
York, Pa. 17404

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on this _26_ day of _June_ 2007.

Norman A. Thomas

-18-

# APPENDIX 8-3

# Meissner Memorandum on Prosecutorial Discretion



**U.S. Department of Justice**
Immigration and Naturalization Service

_____

HQOPP 50/4

Office of the Commissioner

425 I Street NW
Washington, DC 20536

NOV 17 2000

MEMORANDUM TO REGIONAL DIRECTORS
DISTRICT DIRECTORS
CHIEF PATROL AGENTS
REGIONAL AND DISTRICT COUNSEL

FROM:  *Doris Meissner*
Commissioner
Immigration and Naturalization Service

SUBJECT:  Exercising Prosecutorial Discretion

Since the 1996 amendments to the Immigration and Nationality Act (INA) which limited the authority of immigration judges to provide relief from removal in many cases, there has been increased attention to the scope and exercise of the Immigration and Naturalization Service's (INS or the Service) prosecutorial discretion. This memorandum describes the principles with which INS exercises prosecutorial discretion and the process to be followed in making and monitoring discretionary decisions. Service officers are not only authorized by law but expected to exercise discretion in a judicious manner at all stages of the enforcement process–from planning investigations to enforcing final orders–subject to their chains of command and to the particular responsibilities and authority applicable to their specific position. In exercising this discretion, officers must take into account the principles described below in order to promote the efficient and effective enforcement of the immigration laws and the interests of justice.

More specific guidance geared to exercising discretion in particular program areas already exists in some instances,[1] and other program-specific guidance will follow separately.

_____

[1] For example, standards and procedures for placing an alien in deferred action status are provided in the Standard Operating Procedures for Enforcement Officers: Arrest, Detention, Processing, and Removal (Standard Operating Procedures), Part X. This memorandum is intended to provide general principles, and does not replace any previous specific guidance provided about particular INS actions, such as "Supplemental Guidelines on the Use of Cooperating Individuals and Confidential Informants Following the Enactment of IIRIRA," dated December 29, 1997. This memorandum is not intended to address every situation in which the exercise of prosecutorial discretion may be appropriate. If INS personnel in the exercise of their duties recognize apparent conflict between any of their specific policy requirements and these general guidelines, they are encouraged to bring the matter to their supervisor's attention, and any conflict between policies should be raised through the appropriate chain of command for resolution.

517

Memorandum for Regional Directors, et al.

Subject: Exercising Prosecutorial Discretion                                           Page 2

However, INS officers should continue to exercise their prosecutorial discretion in appropriate cases during the period before more specific program guidance is issued.

A statement of principles concerning discretion serves a number of important purposes. As described in the "Principles of Federal Prosecution," [2] part of the U.S. Attorneys' manual, such principles provide convenient reference points for the process of making prosecutorial decisions; facilitate the task of training new officers in the discharge of their duties; contribute to more effective management of the Government's limited prosecutorial resources by promoting greater consistency among the prosecutorial activities of different offices and between their activities and the INS' law enforcement priorities; make possible better coordination of investigative and prosecutorial activity by enhancing the understanding between the investigative and prosecutorial components; and inform the public of the careful process by which prosecutorial decisions are made.

**Legal and Policy Background**

"Prosecutorial discretion" is the authority of an agency charged with enforcing a law to decide whether to enforce, or not to enforce, the law against someone. The INS, like other law enforcement agencies, has prosecutorial discretion and exercises it every day. In the immigration context, the term applies not only to the decision to issue, serve, or file a Notice to Appear (NTA), but also to a broad range of other discretionary enforcement decisions, including among others: Focusing investigative resources on particular offenses or conduct; deciding whom to stop, question, and arrest; maintaining an alien in custody; seeking expedited removal or other forms of removal by means other than a removal proceeding; settling or dismissing a proceeding; granting deferred action or staying a final order; agreeing to voluntary departure, withdrawal of an application for admission, or other action in lieu of removing the alien; pursuing an appeal; and executing a removal order.

The "favorable exercise of prosecutorial discretion" means a discretionary decision not to assert the full scope of the INS' enforcement authority as permitted under the law. Such decisions will take different forms, depending on the status of a particular matter, but include decisions such as not issuing an NTA (discussed in more detail below under "Initiating Proceedings"), not detaining an alien placed in proceedings (where discretion remains despite mandatory detention requirements), and approving deferred action.

---

[2] For this discussion, and much else in this memorandum, we have relied heavily upon the Principles of Federal Prosecution, chapter 9-27.000 in the U.S. Department of Justice's <u>United States Attorneys' Manual</u> (Oct. 1997). There are significant differences, of course, between the role of the U.S. Attorneys' offices in the criminal justice system, and INS responsibilities to enforce the immigration laws, but the general approach to prosecutorial discretion stated in this memorandum reflects that taken by the Principles of Federal Prosecution.

MEISSNER MEMORANDUM ON PROSECUTORIAL DISCRETION

App. 8-3

Memorandum for Regional Directors, et al.
Subject: Exercising Prosecutorial Discretion

Page 3

Courts recognize that prosecutorial discretion applies in the civil, administrative arena just as it does in criminal law. Moreover, the Supreme Court "has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." Heckler v. Chaney, 470 U.S. 821, 831 (1985). Both Congress and the Supreme Court have recently reaffirmed that the concept of prosecutorial discretion applies to INS enforcement activities, such as whether to place an individual in deportation proceedings. INA section 242(g); Reno v. American-Arab Anti-Discrimination Committee, 525 U.S. 471 (1999). The "discretion" in prosecutorial discretion means that prosecutorial decisions are not subject to judicial review or reversal, except in extremely narrow circumstances. Consequently, it is a powerful tool that must be used responsibly.

As a law enforcement agency, the INS generally has prosecutorial discretion within its area of law enforcement responsibility unless that discretion has been clearly limited by statute in a way that goes beyond standard terminology. For example, a statute directing that the INS "shall" remove removable aliens would not be construed by itself to limit prosecutorial discretion, but the specific limitation on releasing certain criminal aliens in section 236(c)(2) of the INA evidences a specific congressional intention to limit discretion not to detain certain criminal aliens in removal proceedings that would otherwise exist. Personnel who are unsure whether the INS has discretion to take a particular action should consult their supervisor and legal counsel to the extent necessary.

It is important to recognize not only what prosecutorial discretion is, but also what it is not. The doctrine of prosecutorial discretion applies to law enforcement decisions whether, and to what extent, to exercise the coercive power of the Government over liberty or property, as authorized by law in cases when individuals have violated the law. Prosecutorial discretion does not apply to affirmative acts of approval, or grants of benefits, under a statute or other applicable law that provides requirements for determining when the approval should be given. For example, the INS has prosecutorial discretion not to place a removable alien in proceedings, but it does not have prosecutorial discretion to approve a naturalization application by an alien who is ineligible for that benefit under the INA.

This distinction is not always an easy, bright-line rule to apply. In many cases, INS decisionmaking involves both a prosecutorial decision to take or not to take enforcement action, such as placing an alien in removal proceedings, and a decision whether or not the alien is substantively eligible for a benefit under the INA. In many cases, benefit decisions involve the exercise of significant discretion which in some cases is not judicially reviewable, but which is not prosecutorial discretion.

Prosecutorial discretion can extend only up to the substantive and jurisdictional limits of the law. It can never justify an action that is illegal under the substantive law pertaining to the

App. 8-3

U.S. CITIZENSHIP AND NATURALIZATION HANDBOOK

Memorandum for Regional Directors, et al.
Subject: Exercising Prosecutorial Discretion                                        Page 4

conduct, or one that while legal in other contexts, is not within the authority of the agency or officer taking it. Prosecutorial discretion to take an enforcement action does not modify or waive any legal requirements that apply to the action itself. For example, an enforcement decision to focus on certain types of immigration violators for arrest and removal does not mean that the INS may arrest any person without probable cause to do so for an offense within its jurisdiction. Service officers who are in doubt whether a particular action complies with applicable constitutional, statutory, or case law requirements should consult with their supervisor and obtain advice from the district or sector counsel or representative of the Office of General Counsel to the extent necessary.

Finally, exercising prosecutorial discretion does not lessen the INS' commitment to enforce the immigration laws to the best of our ability. It is not an invitation to violate or ignore the law. Rather, it is a means to use the resources we have in a way that best accomplishes our mission of administering and enforcing the immigration laws of the United States.

## Principles of Prosecutorial Discretion

Like all law enforcement agencies, the INS has finite resources, and it is not possible to investigate and prosecute all immigration violations. The INS historically has responded to this limitation by setting priorities in order to achieve a variety of goals. These goals include protecting public safety, promoting the integrity of the legal immigration system, and deterring violations of the immigration law.

It is an appropriate exercise of prosecutorial discretion to give priority to investigating, charging, and prosecuting those immigration violations that will have the greatest impact on achieving these goals. The INS has used this principle in the design and execution of its border enforcement strategy, its refocus on criminal smuggling networks, and its concentration on fixing benefit-granting processes to prevent fraud. An agency's focus on maximizing its impact under appropriate principles, rather than devoting resources to cases that will do less to advance these overall interests, is a crucial element in effective law enforcement management.

The Principles of Federal Prosecution governing the conduct of U.S. Attorneys use the concept of a "substantial Federal interest." A U.S. Attorney may properly decline a prosecution if "*no substantial Federal interest would be served by prosecution.*" This principle provides a useful frame of reference for the INS, although applying it presents challenges that differ from those facing a U.S. Attorney. In particular, as immigration is an exclusively Federal responsibility, the option of an adequate alternative remedy under state law is not available. In an immigration case, the interest at stake will always be Federal. Therefore, we must place particular emphasis on the element of substantiality. How important is the Federal interest in the case, as compared to other cases and priorities? That is the overriding question, and answering it requires examining a number of factors that may differ according to the stage of the case.

MEISSNER MEMORANDUM ON PROSECUTORIAL DISCRETION

App. 8-3

Memorandum for Regional Directors, et al.
Subject: Exercising Prosecutorial Discretion

Page 5

As a general matter, INS officers may decline to prosecute a legally sufficient immigration case if the Federal immigration enforcement interest that would be served by prosecution is not substantial.[3] Except as may be provided specifically in other policy statements or directives, the responsibility for exercising prosecutorial discretion in this manner rests with the District Director (DD) or Chief Patrol Agent (CPA) based on his or her common sense and sound judgment.[4] The DD or CPA should obtain legal advice from the District or Sector Counsel to the extent that such advice may be necessary and appropriate to ensure the sound and lawful exercise of discretion, particularly with respect to cases pending before the Executive Office for Immigration Review (EOIR).[5] The DD's or CPA's authority may be delegated to the extent necessary and proper, except that decisions not to place a removable alien in removal proceedings, or decisions to move to terminate a proceeding which in the opinion of the District or Sector Counsel is legally sufficient, may not be delegated to an officer who is not authorized under 8 C.F.R. § 239.1 to issue an NTA. A DD's or CPA's exercise of prosecutorial discretion will not normally be reviewed by Regional or Headquarters authority. However, DDs and CPAs remain subject to their chains of command and may be supervised as necessary in their exercise of prosecutorial discretion.

### *Investigations*

Priorities for deploying investigative resources are discussed in other documents, such as the interior enforcement strategy, and will not be discussed in detail in this memorandum. These previously identified priorities include identifying and removing criminal and terrorist aliens, deterring and dismantling alien smuggling, minimizing benefit fraud and document abuse, responding to community complaints about illegal immigration and building partnerships to solve local problems, and blocking and removing employers' access to undocumented workers. Even within these broad priority areas, however, the Service must make decisions about how best to expend its resources.

Managers should plan and design operations to maximize the likelihood that serious offenders will be identified. Supervisors should ensure that front-line investigators understand that it is not mandatory to issue an NTA in every case where they have reason to believe that an alien is removable, and agents should be encouraged to bring questionable cases to a supervisor's attention. Operational planning for investigations should include consideration of appropriate procedures for supervisory and legal review of individual NTA issuing decisions.

---

[3] In some cases even a substantial immigration enforcement interest in prosecuting a case could be outweighed by other interests, such as the foreign policy of the United States. Decisions that require weighing such other interests should be made at the level of responsibility within the INS or the Department of Justice that is appropriate in light of the circumstances and interests involved.
[4] This general reference to DDs and CPAs is not intended to exclude from coverage by this memorandum other INS personnel, such as Service Center directors, who may be called upon to exercise prosecutorial discretion and do not report to DDs or CPAs, or to change any INS chains of command.
[5] Exercising prosecutorial discretion with respect to cases pending before EOIR involves procedures set forth at 8 CFR 239.2 and 8 CFR Part 3, such as obtaining the court's approval of a motion to terminate proceedings.

App. 8-3

U.S. CITIZENSHIP AND NATURALIZATION HANDBOOK

Memorandum for Regional Directors, et al.
Subject: Exercising Prosecutorial Discretion                                    Page 6

Careful design of enforcement operations is a key element in the INS' exercise of prosecutorial discretion. Managers should consider not simply whether a particular effort is legally supportable, but whether it best advances the INS' goals, compared with other possible uses of those resources. As a general matter, investigations that are specifically focused to identify aliens who represent a high priority for removal should be favored over investigations which, by their nature, will identify a broader variety of removable aliens. Even an operation that is designed based on high-priority criteria, however, may still identify individual aliens who warrant a favorable exercise of prosecutorial discretion.[6]

## *Initiating and Pursuing Proceedings*

Aliens who are subject to removal may come to the Service's attention in a variety of ways. For example, some aliens are identified as a result of INS investigations, while others are identified when they apply for immigration benefits or seek admission at a port-of-entry. While the context in which the INS encounters an alien may, as a practical matter, affect the Service's options, it does not change the underlying principle that the INS has discretion and should exercise that discretion appropriately given the circumstances of the case.

Even when an immigration officer has reason to believe that an alien is removable and that there is sufficient evidence to obtain a final order of removal, it may be appropriate to decline to proceed with that case. This is true even when an alien is removable based on his or her criminal history and when the alien–if served with an NTA–would be subject to mandatory detention. The INS may exercise its discretion throughout the enforcement process. Thus, the INS can choose whether to issue an NTA, whether to cancel an NTA prior to filing with the immigration court or move for dismissal in immigration court (under 8 CFR 239.2), whether to detain (for those aliens not subject to mandatory detention), whether to offer an alternative to removal such as voluntary departure or withdrawal of an application for admission, and whether to stay an order of deportation.

The decision to exercise any of these options or other alternatives in a particular case requires an individualized determination, based on the facts and the law. As a general matter, it is better to exercise favorable discretion as early in the process as possible, once the relevant facts have been determined, in order to conserve the Service's resources and in recognition of the alien's interest in avoiding unnecessary legal proceedings. However, there is often a conflict

---

[6] For example, operations in county jails are designed to identify and remove criminal aliens, a high priority for the Service. Nonetheless, an investigator working at a county jail and his or her supervisor should still consider whether the exercise of prosecutorial discretion would be appropriate in individual cases.

522

MEISSNER MEMORANDUM ON PROSECUTORIAL DISCRETION

App. 8-3

Memorandum for Regional Directors, et al.
Subject: Exercising Prosecutorial Discretion

Page 7

between making decisions as soon as possible, and making them based on evaluating as many relevant, credible facts as possible. Developing an extensive factual record prior to making a charging decision may itself consume INS resources in a way that negates any saving from forgoing a removal proceeding.

Generally, adjudicators may have a better opportunity to develop a credible factual record at an earlier stage than investigative or other enforcement personnel. It is simply not practicable to require officers at the arrest stage to develop a full investigative record on the equities of each case (particularly since the alien file may not yet be available to the charging office), and this memorandum does not require such an analysis. Rather, what is needed is knowledge that the INS is not legally required to institute proceedings in every case, openness to that possibility in appropriate cases, development of facts relevant to the factors discussed below to the extent that it is reasonably possible to do so under the circumstances and in the timeframe that decisions must be made, and implementation of any decision to exercise prosecutorial discretion.

There is no precise formula for identifying which cases warrant a favorable exercise of discretion. Factors that should be taken into account in deciding whether to exercise prosecutorial discretion include, but are not limited to, the following:

- Immigration status: Lawful permanent residents generally warrant greater consideration. However, other removable aliens may also warrant the favorable exercise of discretion, depending on all the relevant circumstances.
- Length of residence in the United States: The longer an alien has lived in the United States, particularly in legal status, the more this factor may be considered a positive equity.
- Criminal history: Officers should take into account the nature and severity of any criminal conduct, as well as the time elapsed since the offense occurred and evidence of rehabilitation. It is appropriate to take into account the actual sentence or fine that was imposed, as an indicator of the seriousness attributed to the conduct by the court. Other factors relevant to assessing criminal history include the alien's age at the time the crime was committed and whether or not he or she is a repeat offender.
- Humanitarian concerns: Relevant humanitarian concerns include, but are not limited to, family ties in the United States; medical conditions affecting the alien or the alien's family; the fact that an alien entered the United States at a very young age; ties to one's home country (e.g., whether the alien speaks the language or has relatives in the home country); extreme youth or advanced age; and home country conditions.
- Immigration history: Aliens without a past history of violating the immigration laws (particularly violations such as reentering after removal, failing to appear at hearing, or resisting arrest that show heightened disregard for the legal process) warrant favorable consideration to a greater extent than those with such a history. The seriousness of any such violations should also be taken into account.

523

App. 8-3

Memorandum for Regional Directors, et al.
Subject: Exercising Prosecutorial Discretion

Page 8

- <u>Likelihood of ultimately removing the alien</u>: Whether a removal proceeding would have a reasonable likelihood of ultimately achieving its intended effect, in light of the case circumstances such as the alien's nationality, is a factor that should be considered.
- <u>Likelihood of achieving enforcement goal by other means</u>: In many cases, the alien's departure from the United States may be achieved more expeditiously and economically by means other than removal, such as voluntary return, withdrawal of an application for admission, or voluntary departure.
- <u>Whether the alien is eligible or is likely to become eligible for other relief</u>: Although not determinative on its own, it is relevant to consider whether there is a legal avenue for the alien to regularize his or her status if not removed from the United States. The fact that the Service cannot confer complete or permanent relief, however, does not mean that discretion should not be exercised favorably if warranted by other factors.
- <u>Effect of action on future admissibility</u>: The effect an action such as removal may have on an alien can vary–for example, a time-limited as opposed to an indefinite bar to future admissibility–and these effects may be considered.
- <u>Current or past cooperation with law enforcement authorities</u>: Current or past cooperation with the INS or other law enforcement authorities, such as the U.S. Attorneys, the Department of Labor, or National Labor Relations Board, among others, weighs in favor of discretion.
- <u>Honorable U.S. military service</u>: Military service with an honorable discharge should be considered as a favorable factor. See Standard Operating Procedures Part V.D.8 (issuing an NTA against current or former member of armed forces requires advance approval of Regional Director).
- <u>Community attention</u>: Expressions of opinion, in favor of or in opposition to removal, may be considered, particularly for relevant facts or perspectives on the case that may not have been known to or considered by the INS. Public opinion or publicity (including media or congressional attention) should not, however, be used to justify a decision that cannot be supported on other grounds. Public and professional responsibility will sometimes require the choice of an unpopular course.
- <u>Resources available to the INS</u>: As in planning operations, the resources available to the INS to take enforcement action in the case, compared with other uses of the resources to fulfill national or regional priorities, are an appropriate factor to consider, but it should not be determinative. For example, when prosecutorial discretion should be favorably exercised under these factors in a particular case, that decision should prevail even if there is detention space available.

Obviously, not all of the factors will be applicable to every case, and in any particular case one factor may deserve more weight than it might in another case. There may be other factors, not on the list above, that are appropriate to consider. The decision should be based on the totality of the circumstances, not on any one factor considered in isolation. General guidance such as this cannot provide a "bright line" test that may easily be applied to determine the "right" answer in every case. In many cases, minds reasonably can differ, different factors may point in different directions, and there is no clearly "right" answer. Choosing a course of action in difficult

524

MEISSNER MEMORANDUM ON PROSECUTORIAL DISCRETION

Memorandum for Regional Directors, et al.
Subject: Exercising Prosecutorial Discretion

cases must be an exercise of judgment by the responsible officer based on his or her experience, good sense, and consideration of the relevant factors to the best of his or her ability.

There are factors that may not be considered. Impermissible factors include:

- An individual's race, religion, sex, national origin, or political association, activities or beliefs;[7]
- The officer's own personal feelings regarding the individual; or
- The possible effect of the decision on the officer's own professional or personal circumstances.

In many cases, the procedural posture of the case, and the state of the factual record, will affect the ability of the INS to use prosecutorial discretion. For example, since the INS cannot admit an inadmissible alien to the United States unless a waiver is available, in many cases the INS' options are more limited in the admission context at a port-of-entry than in the deportation context.

Similarly, the INS may consider the range of options and information likely to be available at a later time. For example, an officer called upon to make a charging decision may reasonably determine that he or she does not have a sufficient, credible factual record upon which to base a favorable exercise of prosecutorial discretion not to put the alien in proceedings, that the record cannot be developed in the timeframe in which the decision must be made, that a more informed prosecutorial decision likely could be made at a later time during the course of proceedings, and that if the alien is not served with an NTA now, it will be difficult or impossible to do so later.

Such decisions must be made, however, with due regard for the principles of these guidelines, and in light of the other factors discussed here. For example, if there is no relief available to the alien in a removal proceeding and the alien is subject to mandatory detention if

---

[7] This general guidance on factors that should not be relied upon in making a decision whether to enforce the law against an individual is not intended to prohibit their consideration to the extent they are directly relevant to an alien's status under the immigration laws or eligibility for a benefit. For example, religion and political beliefs are often directly relevant in asylum cases and need to be assessed as part of a prosecutorial determination regarding the strength of the case, but it would be improper for an INS officer to treat aliens differently based on his personal opinion about a religion or belief. Political activities may be relevant to a ground of removal on national security or terrorism grounds. An alien's nationality often directly affects his or her eligibility for adjustment or other relief, the likelihood that he or she can be removed, or the availability of prosecutorial options such as voluntary return, and may be considered to the extent these concerns are pertinent.

App. 8-3

Memorandum for Regional Directors, et al.
Subject: Exercising Prosecutorial Discretion

placed in proceedings, that situation suggests that the exercise of prosecutorial discretion, if appropriate, would be more useful to the INS if done sooner rather than later. It would be improper for an officer to assume that someone else at some later time will always be able to make a more informed decision, and therefore never to consider exercising discretion.

Factors relevant to exercising prosecutorial discretion may come to the Service's attention in various ways. For example, aliens may make requests to the INS to exercise prosecutorial discretion by declining to pursue removal proceedings. Alternatively, there may be cases in which an alien asks to be put in proceedings (for example, to pursue a remedy such as cancellation of removal that may only be available in that forum). In either case, the INS may consider the request, but the fact that it is made should not determine the outcome, and the prosecutorial decision should be based upon the facts and circumstances of the case. Similarly, the fact that an alien has <u>not</u> requested prosecutorial discretion should not influence the analysis of the case. Whether, and to what extent, any request should be considered is also a matter of discretion. Although INS officers should be open to new facts and arguments, attempts to exploit prosecutorial discretion as a delay tactic, as a means merely to revisit matters that have been thoroughly considered and decided, or for other improper tactical reasons should be rejected. There is no legal right to the exercise of prosecutorial discretion, and (as stated at the close of this memorandum) this memorandum creates no right or obligation enforceable at law by any alien or any other party.

**Process for Decisions**

_Identification of Suitable Cases_

No single process of exercising discretion will fit the multiple contexts in which the need to exercise discretion may arise. Although this guidance is designed to promote consistency in the application of the immigration laws, it is not intended to produce rigid uniformity among INS officers in all areas of the country at the expense of the fair administration of the law. Different offices face different conditions and have different requirements. Service managers and supervisors, including DDs and CPAs, and Regional, District, and Sector Counsel must develop mechanisms appropriate to the various contexts and priorities, keeping in mind that it is better to exercise discretion as early in process as possible once the factual record has been identified.[8] In particular, in cases where it is clear that no statutory relief will be available at the immigration hearing and where detention will be mandatory, it best conserves the Service's resources to make a decision early.

Enforcement and benefits personnel at all levels should understand that prosecutorial discretion exists and that it is appropriate and expected that the INS will exercise this authority in appropriate cases. DDs, CPAs, and other supervisory officials (such as District and

---

[8] DDs, CPAs, and other INS personnel should also be open, however, to possible reconsideration of decisions (either for or against the exercise of discretion) based upon further development of the facts.

MEISSNER MEMORANDUM ON PROSECUTORIAL DISCRETION

App. 8-3

Memorandum for Regional Directors, et al.
Subject: Exercising Prosecutorial Discretion

Page 11

Sector Counsels) should encourage their personnel to bring potentially suitable cases for the favorable exercise of discretion to their attention for appropriate resolution. To assist in exercising their authority, DDs and CPAs may wish to convene a group to provide advice on difficult cases that have been identified as potential candidates for prosecutorial discretion.

It is also appropriate for DDs and CPAs to develop a list of "triggers" to help their personnel identify cases at an early stage that may be suitable for the exercise of prosecutorial discretion. These cases should then be reviewed at a supervisory level where a decision can be made as to whether to proceed in the ordinary course of business, to develop additional facts, or to recommend a favorable exercise of discretion. Such triggers could include the following facts (whether proven or alleged):

Lawful permanent residents;
Aliens with a serious health condition;
Juveniles;
Elderly aliens;
Adopted children of U.S. citizens;
U.S. military veterans;
Aliens with lengthy presence in United States (i.e., 10 years or more); or
Aliens present in the United States since childhood.

Since workloads and the type of removable aliens encountered may vary significantly both within and between INS offices, this list of possible trigger factors for supervisory review is intended neither to be comprehensive nor mandatory in all situations. Nor is it intended to suggest that the presence or absence of "trigger" facts should itself determine whether prosecutorial discretion should be exercised, as compared to review of all the relevant factors as discussed elsewhere in these guidelines. Rather, development of trigger criteria is intended solely as a suggested means of facilitating identification of potential cases that may be suitable for prosecutorial review as early as possible in the process.

### Documenting Decisions

When a DD or CPA decides to exercise prosecutorial discretion favorably, that decision should be clearly documented in the alien file, including the specific decision taken and its factual and legal basis. DDs and CPAs may also document decisions based on a specific set of facts not to exercise prosecutorial discretion favorably, but this is not required by this guidance.

The alien should also be informed in writing of a decision to exercise prosecutorial discretion favorably, such as not placing him or her in removal proceedings or not pursuing a case. This normally should be done by letter to the alien and/or his or her attorney of record, briefly stating the decision made and its consequences. It is not necessary to recite the facts of the case or the INS' evaluation of the facts in such letters. Although the specifics of the letter

App. 8-3

Memorandum for Regional Directors, et al.
Subject: Exercising Prosecutorial Discretion

will vary depending on the circumstances of the case and the action taken, it must make it clear to the alien that exercising prosecutorial discretion does not confer any immigration status, ability to travel to the United States (unless the alien applies for and receives advance parole), immunity from future removal proceedings, or any enforceable right or benefit upon the alien. If, however, there is a potential benefit that is linked to the action (for example, the availability of employment authorization for beneficiaries of deferred action), it is appropriate to identify it.

The obligation to notify an individual is limited to situations in which a specific, identifiable decision to refrain from action is taken in a situation in which the alien normally would expect enforcement action to proceed. For example, it is not necessary to notify aliens that the INS has refrained from focusing investigative resources on them, but a specific decision not to proceed with removal proceedings against an alien who has come into INS custody should be communicated to the alien in writing. This guideline is not intended to replace existing standard procedures or forms for deferred action, voluntary return, voluntary departure, or other currently existing and standardized processes involving prosecutorial discretion.

*Future Impact*

An issue of particular complexity is the future effect of prosecutorial discretion decisions in later encounters with the alien. Unlike the criminal context, in which statutes of limitation and venue requirements often preclude one U.S. Attorney's office from prosecuting an offense that another office has declined, immigration violations are continuing offenses that, as a general principle of immigration law, continue to make an alien legally removable regardless of a decision not to pursue removal on a previous occasion. An alien may come to the attention of the INS in the future through seeking admission or in other ways. An INS office should abide by a favorable prosecutorial decision taken by another office as a matter of INS policy, absent new facts or changed circumstances. However, if a removal proceeding is transferred from one INS district to another, the district assuming responsibility for the case is not bound by the charging district's decision to proceed with an NTA, if the facts and circumstances at a later stage suggest that a favorable exercise of prosecutorial discretion is appropriate.

Service offices should review alien files for information on previous exercises of prosecutorial discretion at the earliest opportunity that is practicable and reasonable and take any such information into account. In particular, the office encountering the alien must carefully assess to what extent the relevant facts and circumstances are the same or have changed either procedurally or substantively (either with respect to later developments, or more detailed knowledge of past circumstances) from the basis for the original exercise of discretion. A decision by an INS office to take enforcement action against the subject of a previous documented exercise of favorable prosecutorial discretion should be memorialized with a memorandum to the file explaining the basis for the decision, unless the charging documents on their face show a material difference in facts and circumstances (such as a different ground of deportability).

Memorandum for Regional Directors, et al.
Subject: Exercising Prosecutorial Discretion

## Legal Liability and Enforceability

The question of liability may arise in the implementation of this memorandum. Some INS personnel have expressed concerns that, if they exercise prosecutorial discretion favorably, they may become subject to suit and personal liability for the possible consequences of that decision. We cannot promise INS officers that they will never be sued. However, we can assure our employees that Federal law shields INS employees who act in reasonable reliance upon properly promulgated agency guidance within the agency's legal authority – such as this memorandum–from personal legal liability for those actions.

The principles set forth in this memorandum, and internal office procedures adopted hereto, are intended solely for the guidance of INS personnel in performing their duties. They are not intended to, do not, and may not be relied upon to create a right or benefit, substantive or procedural, enforceable at law by any individual or other party in removal proceedings, in litigation with the United States, or in any other form or manner.

## Training and Implementation

Training on the implementation of this memorandum for DDs, CPAs, and Regional, District, and Sector Counsel will be conducted at the regional level. This training will include discussion of accountability and periodic feedback on implementation issues. In addition, following these regional sessions, separate training on prosecutorial discretion will be conducted at the district level for other staff, to be designated. The regions will report to the Office of Field Operations when this training has been completed.

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

L
07-1286
HHK

## I (a) PLAINTIFFS

Norman A. Thomas

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF 88888
(EXCEPT IN U.S. PLAINTIFF CASES)

PRO SE (NT)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

## DEFENDANTS

DC Government, et al.,

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
T

Case: 1:07-cv-01286
Assigned To : Kennedy, Henry H.
Assign. Date : 7/19/2007
Description: CIVIL RIGHTS-NON EMPLOY.

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

□ 1 U.S. Government
Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

□ 2 U.S. Government
Defendant

□ 4 Diversity
(Indicate Citizenship of Parties
in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | □ 1 | □ 1 | Incorporated or Principal Place of Business in This State | □ 4 | □ 4 |
| Citizen of Another State | □ 2 | □ 2 | Incorporated and Principal Place of Business in Another State | □ 5 | □ 5 |
| Citizen or Subject of a Foreign Country | □ 3 | □ 3 | Foreign Nation | □ 6 | □ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

□ **A. Antitrust**

□ 410 Antitrust

□ **B. Personal Injury/Malpractice**

□ 310 Airplane
□ 315 Airplane Product Liability
□ 320 Assault, Libel & Slander
□ 330 Federal Employers Liability
□ 340 Marine
□ 345 Marine Product Liability
□ 350 Motor Vehicle
□ 355 Motor Vehicle Product Liability
□ 360 Other Personal Injury
□ 362 Medical Malpractice
□ 365 Product Liability
□ 368 Asbestos Product Liability

□ **C. Administrative Agency Review**

□ 151 Medicare Act

**Social Security:**
□ 861 HIA ((1395ff)
□ 862 Black Lung (923)
□ 863 DIWC/DIWW (405(g)
□ 864 SSID Title XVI
□ 865 RSI (405(g)

**Other Statutes**
□ 891 Agricultural Acts
□ 892 Economic Stabilization Act
□ 893 Environmental Matters
□ 894 Energy Allocation Act
□ 890 Other Statutory Actions (If Administrative Agency is Involved)

□ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

□ **E. General Civil (Other)** OR □ **F. Pro Se General Civil**

**Real Property**
□ 210 Land Condemnation
□ 220 Foreclosure
□ 230 Rent, Lease & Ejectment
□ 240 Torts to Land
□ 245 Tort Product Liability
□ 290 All Other Real Property

**Personal Property**
□ 370 Other Fraud
□ 371 Truth in Lending
□ 380 Other Personal Property Damage
□ 385 Property Damage Product Liability

**Bankruptcy**
□ 422 Appeal 28 USC 158
□ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
□ 535 Death Penalty
□ 540 Mandamus & Other
□ 550 Civil Rights
□ 555 Prison Condition

**Property Rights**
□ 820 Copyrights
□ 830 Patent
□ 840 Trademark

**Federal Tax Suits**
□ 870 Taxes (US plaintiff or defendant
□ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
□ 610 Agriculture
□ 620 Other Food &Drug
□ 625 Drug Related Seizure of Property 21 USC 881
□ 630 Liquor Laws
□ 640 RR & Truck
□ 650 Airline Regs
□ 660 Occupational Safety/Health
□ 690 Other

**Other Statutes**
□ 400 State Reapportionment
□ 430 Banks & Banking
□ 450 Commerce/ICC Rates/etc.
□ 460 Deportation

□ 470 Racketeer Influenced & Corrupt Organizations
□ 480 Consumer Credit
□ 490 Cable/Satellite TV
□ 810 Selective Service
□ 850 Securities/Commodities/ Exchange
□ 875 Customer Challenge 12 USC 3410
□ 900 Appeal of fee determination under equal access to Justice
□ 950 Constitutionality of State Statutes
□ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

O

| ☐ G. *Habeas Corpus 2255* | ☐ H. *Employment Discrimination* | ☐ I. *FOIA/PRIVACY ACT* | ☐ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) | ☐ 895 Freedom of Information Act | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| ☐ 510 Motion/Vacate Sentence | | ☐ 890 Other Statutory Actions (if Privacy Act) | |
| | *(If pro se, select this deck)** | *(If pro se, select this deck)** | |

| ☐ K. *Labor/ERISA (non-employment)* | ☐ L. *Other Civil Rights (non-employment)* | ☐ M. *Contract* | ☐ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act | ☐ 441 Voting (if not Voting Rights Act) | ☐ 110 Insurance | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |
| ☐ 720 Labor/Mgmt. Relations | ☐ 443 Housing/Accommodations | ☐ 120 Marine | |
| ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 444 Welfare | ☐ 130 Miller Act | |
| ☐ 740 Labor Railway Act | ☐ 440 Other Civil Rights | ☐ 140 Negotiable Instrument | |
| ☐ 790 Other Labor Litigation | ☐ 445 American w/Disabilities-Employment | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | |
| ☐ 791 Empl. Ret. Inc. Security Act | ☐ 446 Americans w/Disabilities-Other | ☐ 153 Recovery of Overpayment of Veteran's Benefits | |
| | | ☐ 160 Stockholder's Suits | |
| | | ☐ 190 Other Contracts | |
| | | ☐ 195 Contract Product Liability | |
| | | ☐ 196 Franchise | |

**V. ORIGIN**

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ Multi district Litigation   ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

42 USC 1983

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS   ☐ ACTION UNDER F.R.C.P. 23   **DEMAND $** 0   Check YES only if demanded in complaint   **JURY DEMAND:** ☐ YES   ☒ NO

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   ☐ YES   ☒ NO   If yes, please complete related case form.

**DATE** 7/19/07   **SIGNATURE OF ATTORNEY OF RECORD**

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.      CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.      CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.      CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.      RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

N:\forms\js-44.wpd