## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

NORMAN A. THOMAS,

                Plaintiff,

     v.

DISTRICT OF COLUMBIA
GOVERNMENT, *et al.*,

                Defendants.

Civil Action No. 07-1286  (HHK)

---

## MEMORANDUM OPINION

      Norman Thomas, a Jamaican National, brings this action against the District of Columbia

Government ("District"), the District of Columbia Board of Parole ("Parole Board"), the District

of Columbia Department of Corrections ("Department of Corrections"), the United States

Department of Homeland Security ("Homeland Security"), and the State of New York alleging

that these entities violated various laws.[1]  Thomas's causes of action against the District and the

State of New York are based on 42 U.S.C. § 1983.  Thomas, who has been convicted of criminal

offenses and has been in custody for various lengths of time as a result of his criminal conduct,

---

[1]     The District of Columbia Department of Corrections is not a suable entity, *see, e.g., Kundrat v. District of Columbia*, 106 F. Supp. 2d 1, 5 (D.D.C. 2000) (listing various District of Columbia agencies, including the Department of Corrections, that are *non sui juris*), and the District of Columbia Board of Parole has been abolished.  *See Sellmon v. Reilly*, 551 F. Supp. 2d 66, 68 (D.D.C. 2008) (noting that the National Capital Revitalization and Self-Government Improvement Act, Pub. L. No. 105-33, § 11231. 111 Stat. 712, 734-37, codified at D.C. Code §§ 24-101 *et seq.*, abolished the District of Columbia Board of Parole and directed the United States Parole Commission to handle parole matters for D.C. Code offenders).  Thomas does not seek any relief from the United States Parole Commission.  *See* Opposition to the Motion to Dismiss ("Pl.'s Opp'n") at 10.  Accordingly, the Court treats Thomas's claims against the District and its components as if they were brought against the District of Columbia only.

seeks to have the records of the time he spent in custody corrected in order to be in a better position to avoid an order of removal issued by the United States Citizenship and Immigration Services ("ICE"), a component of Homeland Security.

Before the court are the District's and Homeland Security's motions to dismiss. Upon consideration of the motions, the oppositions thereto, and the record of this case, the court concludes the motions should be granted.

## I.  BACKGROUND

Thomas was arrested in October 1988 and charged with possession of a controlled substance. Compl. at 2. On February 10, 1989, he was sentenced in the Superior Court of the District of Columbia ("Superior Court") to a term of 20 months to five years' imprisonment, a term which allegedly was to expire on October 14, 1993. *Id.* He served the minimum term and was released on parole by the Parole Board in 1991. *Id.* While on parole and prior to the expiration of the 1989 sentence, Thomas was arrested in Pennsylvania and charged with possession of crack cocaine. *Id.* A jury found him guilty and the Pennsylvania court sentenced him to a term of 5 years' imprisonment. *Id.* at 3.

At some point, Thomas came to the attention of officials of ICE and ICE lodged a detainer against him. *Id.* at 2. Pennsylvania authorities granted Thomas parole in 1993. *Id.* at 3. Before releasing him, Pennsylvania Department of Corrections officials notified both the Parole Board and ICE to ascertain whether either entity wanted to take Thomas into custody. *Id.* The Parole Board declined. *Id.*

2

On or about July 30, 1993, ICE took Thomas into custody and initiated removal proceedings based on his criminal convictions in the District of Columbia and in Pennsylvania.[2] Defendant's Memorandum in Support of Motion to Dismiss and In Opposition to Plaintiff's Motion for a Preliminary Injunction ("DHS Mot."), Declaration of Jacob Antoninis ("Antoninis Decl.") ¶¶ 6-7.  An Immigration Judge released Thomas on bond in 1993 after determining both that there were no outstanding warrants pending and that no local, state, or federal law enforcement agency wanted to take him into custody.  *See id.* ¶ 7; Compl. at 3-4.  Thereafter Thomas resided in New York State.  Compl. at 4.

On August 6, 1995, Thomas was involved in a car accident in New York City.  Compl. at 4.  A police officer at the scene determined that there was an "outstanding warrant for his arrest in the District of Columbia."  *Id.*  Thomas was arrested, transferred to a New York City jail, and, without an extradition hearing, returned to the custody of the District of Columbia on August 7, 1995.  *Id.* at 4-5.  Thomas was informed that the Parole Board considered his 1991 conviction in Pennsylvania a violation of the terms of his parole, and on this basis it issued a parole violator warrant in 1991.  *Id.* at 5.

Thomas "contested these facts with defendant D.C. Board of Parole authorities based on the fact that the Pennsylvania Department of Corrections had notified both the D.C. Board of Parole and the D.C. Department of Corrections ascertaining whether plaintiff was wanted by either of them, and they informed the Pennsylvania Department of Corrections authorities that plaintiff  was not wanted and that plaintiff could be released to [ICE]."  Compl. at 5.  Further,

---

[2]      According to ICE, Thomas was transferred from BOP to ICE custody on July 30, 1993.  Antoninis Decl. ¶ 7.  The circumstances of his BOP custody are unclear in this record.

before ICE released him on bond, ICE "made certain that plaintiff had no outstanding warrants pending." *Id.* According to Thomas, "his D.C. sentence had expired" on October 14, 1993, yet the Parole Board "violated a defunct sentence and made plaintiff serve additional time on this defunct expired sentence imposed on February 10, 1989." *Id.* Ultimately, the Parole Board revoked Thomas's parole and imposed an additional term of imprisonment. *See id.*

The circumstances of Thomas's subsequent detention are unclear. It appears, however, that Thomas again found himself in ICE custody from which he was released on March 28, 1997. Antoninis Decl. ¶ 5. He has remained on release since then, notwithstanding the issuance of a final order of removal on July 2, 2003. *Id.* ¶¶ 5, 8. His efforts to challenge the final removal order, first by appealing to the Board of Immigration Appeals, then by petition for writ of habeas corpus in federal court, and lastly for review by the United States Court of Appeals for the Second Circuit, were unsuccessful. *See id.* ¶¶ 9-12

By this action Thomas "seeks a declaratory judgment so that he can petition the Board of Immigration Appeals to consider him for 212(c) relief" based on a corrected criminal record.[3] Opposition to the Motion to Dismiss Filed By Defendants the District of Columbia and the

---

[3]    Generally, an alien who has been convicted of two or more offenses, "regardless of whether the conviction was in a single trial or whether the offenses arose from a single scheme of misconduct and regardless of whether the offenses involved moral turpitude, for which the aggregate sentences to confinement were 5 years or more[,] is inadmissible." 8 U.S.C. § 1182(a)(2)(B). The waiver provisions to which Thomas refers were repealed by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. *See Immigration and Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 297 (2001). Even though the waiver provisions were repealed, the Supreme Court held that "§ 212(c) relief remains available for aliens . . . whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." *Arias v. United States Attorney General*, 482 F.3d 1281, 1283 n.1 (11th Cir. 2007) (per curiam) (citation omitted).

District of Columbia Department of Corrections ("Pl.'s Opp'n") at 10.  He cannot "adequately challenge the deportation order" before "correct[ing] his criminal record in D.C. which was the only basis for denying Plaintiff relief under 212(c)."  *Id.* at 4.

## II.   DISCUSSION

### A.  Claims Against the District of Columbia

Thomas alleges that his 1995 detention was unlawful because the 1989 Superior Court sentence already had expired.  *See* Compl. at 5.  He asserts that the District of Columbia violated the *Accardi* doctrine,[4] the District of Columbia Administrative Procedures Act, the Good Time Credits Act, and 28 D.C.M.R. § 601.7, in addition to the Fifth Amendment to the United States Constitution, by (1) failing to credit good time and street time in accordance with applicable District of Columbia laws and regulations, and (2) forcing Thomas to serve additional time upon revocation of parole on the sentence imposed in 1989 even though the sentence had expired on October 14, 1993.  In other words, had the District of Columbia properly credited good time pursuant to the Good Time Credits Act and "street time" pursuant to 28 D.C.M.R. § 601.7, his sentence would have expired long before he was taken into custody on August 7, 1995.[5]  *Id.* at 6.

---

[4]    "The *Accardi*  doctrine holds that government agencies are bound to follow their own rules, even self-imposed procedural rules that limit otherwise discretionary decisions." *Wilkinson v. Legal Servs. Corp.*, 27 F. Supp. 2d 32, 34 n.3 (D.D.C. 1998) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267-68 (1954)).

[5]    The Good Time Credits Act of 1986 ("GTCA"), D.C. Law 6-218, § 5, 34 D.C. Reg. 484 (1987), "which took effect in 1987, provides among other things that D.C. Code offenders get credit for their street time against the service of their sentences." *Davis v. Moore*, 772 A.2d 204, 209 (D.C. 2001) (en banc); D.C. Code § 24-431(a) (1996 Repl.).  "Street time" is "the colloquial term for time that a convicted offender spends serving his sentence while on parole." *Id.* at 207.

(continued...)

Further, he attributes the initiation of deportation proceedings to the 1995 detention.  *See id.* at 6-7.  But for the 1995 detention, Thomas asserts that he would have been "entitled to a 212(c) waiver of deportation."  *Id.* at 7; *see id*. at 15.

The District of Columbia moves to dismiss this action on the ground that the complaint fails to state a claim upon which relief can be granted.  Defendants' Memorandum of Points and Authorities in Support of their Motion to Dismiss ("D.C. Mot.") at 4-5.  Specifically, the District

---

[5](...continued)

"The District of Columbia Department of Corrections ha[d] consistently interpreted [D.C. Code § 24-431(a)] to mean that even a prisoner whose parole has been revoked is entitled to credit for time served on parole before revocation."  *Noble v. United States Parole Comm'n*, 82 F.3d 1108, 1110 (D.C. Cir. 1996) (per curiam) (citing 28 D.C.M.R. § 601.7 (1988)).  The GTCA appeared to conflict with a prior statute, which provided that "the time a prisoner was on parole shall not be taken into account to diminish the time for which he was sentenced."  An Act to Establish a Board of Indeterminate Sentence and Parole for the District of Columbia, 47 Stat. 698, ch. 492, § 6 (July 15, 1932) (codified as amended at D.C. Code § 24-206(a) (1996 Repl.)).  In *Noble v. United States Parole Comm'n*, 693 A.2d 1084 (D.C. 1997), a District of Columbia Court of Appeals panel, answering in the affirmative a certified question from the United States Court of Appeals for the District of Columbia Circuit, held that D.C. Code §§ 24-206(a) and 24-431(a) properly are interpreted to mean that, after revocation of a person's parole, the time a person spent on parole before revocation is not credited against his sentence.  *Id.* at 1085.  The en banc court adopted the panel's opinion.  *See Noble v. United States Parole Comm'n*, 711 A.2d 85 (D.C. 1998) (en banc).

Thomas states that he served only the minimum 20-month sentence imposed by the Superior Court in 1989, and that the Pennsylvania offense occurred in 1991 while he was on parole.  This Pennsylvania offense is the basis for the issuance of a violator warrant, Thomas's return to the District's custody in 1995, revocation of parole, and the resulting imposition of a parole violator term.  "It is established that the [Good Times Credit Act] does not apply to parole violators," *Maddox v. United States Parole Comm'n*, No. 08-0931, 2008 WL 2396271, at *1 (D.D.C. May 30, 2008), and "[t]he time a prisoner was on parole shall not be taken into account to diminish the time for which he was sentenced."  D.C. Code § 24-406(a) (formerly codified at D.C. Code § 24-206(a)).  It cannot be said that the District of Columbia erred in failing to award credit for good time and street time in Thomas's case.  Nor can Thomas credibly claim that the District violated the *Accardi* doctrine or its Administrative Procedures Act by interpreting its statutes and regulations in a manner consistent with *Noble*.

argues that Thomas does not allege its municipal liability under 42 U.S.C. § 1983 ("Section 1983").[6]  *See id.* at 5.

"[A] municipality can be found liable under [Section] 1983 only where the municipality *itself* causes the constitutional violation at issue."  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. Dep't of Soc. Serv. of the City of New York*, 436 U.S. 658, 694 (1978) (emphasis in original)).  "*Respondeat superior* or vicarious liability will not attach under [Section] 1983."  *Id.*  The District of Columbia, then, is subject to liability under Section 1983 only "when an official policy or custom causes the complainant to suffer a deprivation of a constitutional right."  *Carter v. District of Columbia*, 795 F.2d 116, 122 (D.C. Cir. 1986).  The policy or custom itself must be the moving force behind the constitutional violation.  *Id.* (citing *Monell*, 436 U.S. at 694); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) ("[M]unicipal liability under § 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by the official or officials

---

[6]    In relevant part, Section 1983  provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.  To state a claim under Section 1983, a complaint must allege facts sufficient to show that the conduct of which a plaintiff complains (1) was committed by a person acting under color of state law, and (2) deprived the plaintiff of a constitutionally-protected right.  *See, e.g., West v. Atkins*, 487 U.S. 42, 48 (1988).  The District of Columbia is a municipality and is considered a "person" for purposes of Section 1983.  *See, e.g., Best v. District of Columbia*, 743 F. Supp. 44, 46 (D.D.C. 1990).  The District does not address in its motion whether Thomas adequately alleges the deprivation of a constitutional right.  The Court presumes without deciding that he does.

responsible for establishing final policy with respect to the subject matter in question.");
*Oklahoma City v. Tuttle*, 471 U.S. 808, 817 (1985) (requiring plaintiff to show a course
deliberately pursued by city establishing affirmative link between city's policy and alleged
constitutional violation).

The District argues that "Thomas has failed to allege that the violation of his
constitutional rights resulted from a District custom, policy, or practice, or that a final policy
decision maker consciously chose to pursue unconstitutional policies and/or ratified
constitutional misconduct." D.C. Mot. at 5. Thomas's opposition relies in large part on factual
allegations appearing nowhere in the complaint, and attempts to stretch those allegations far
enough to survive the District's motion.[7] Factual allegations appearing in briefs or memoranda
generally are not considered when deciding a motion to dismiss pursuant to Fed. R. Civ. P.
12(b)(6). *See Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994). Hence, the Court
relies only on the factual allegations set forth in Thomas's *pro se* complaint. *See id.*

Thomas primarily attributes the violations of his constitutional rights to the actions of the
Parole Board, and to a lesser extent to the Department of Corrections, the officials of which were
"responsible for establishing final policy with respect to parole terms and violations, as well as
the arrest and incarceration of parole violators . . . convicted and sentenced in the District of
Columbia." Pl.'s Opp'n at 7. In his view, these entities failed to properly "execute the laws of
the District," and instead, "executed their policies, customs, and procedures regarding

---

[7]     Thomas filed the original complaint *pro se*. Counsel entered an appearance on
Thomas's behalf on November 8, 2007, and filed Thomas's opposition to the District of
Columbia's motion to dismiss on January 4, 2008. Thomas, through counsel, made no effort to
amend the complaint.

computation of Plaintiff's 1989 sentence and parole term," resulting in the violation of Thomas's

Fifth Amendment right to due process. *Id.* at 2. Further, Thomas asserts that the District of

Columbia "is prohibited from claiming in 1995 that the 1991 conviction was a parole violation of

the 1989 sentence based on the notice the District was given multiple times after the second

conviction without any action taken by D.C. until 1995 when he was petitioning for 212(c)

relief," *id.* at 7-8, and that he need only "allege that the harm incurred be caused by a

constitutional violation and that the city is responsible for such violation," *id.* at 7. Thomas

claims to have met the pleading standard because the complaint put the District of Columbia on

notice of his constitutional claims. *Id.* at 8.

The court liberally construes a complaint filed by a *pro se* litigant, and holds it to a less

stringent standard than is applied to a formal pleading drafted by a lawyer. *See Haines v. Kerner*,

404 U.S. 519, 520 (1972). There is no heightened pleading standard in a civil rights case

alleging municipal liability for civil rights violations, *see Leatherman v. Tarrant County*

*Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993), and a complaint "need

not plead law or match facts to every element of a legal theory." *Sparrow v. United Air Lines,*

*Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2000) (citations omitted). "Nevertheless, Plaintiffs'

Complaint must 'include some factual basis for the allegation of a municipal policy or custom.'"

*Hinson ex rel. N.H. v. Merritt Educ. Ctr.*, 521 F. Supp. 2d 22, 29 (D.D.C. 2007) (quoting

*Atchinson v. District of Columbia*, 73 F.3d 418, 422 (D.C. Cir. 1996)). Thomas's *pro se*

complaint simply cannot be read to include such allegations.

Nothing in the pleading even suggests the existence of an overarching District of

Columbia custom, policy or practice which brought about a violation of Thomas's Fifth

Amendment right to due process.  At most, the complaint recounts a series of actions or decisions

by various District of Columbia entities (the Superior Court, the Department of Corrections, and

the former Parole Board) resulting in Thomas's return to custody upon the execution of a Parole

Board warrant and revocation of parole.  Moreover, any delay in the execution of the parole

violator warrant is not actionable, as the Parole Board was under no obligation to act on its

warrant lodged as a detainer while Thomas was in the custody of others.  *See Moody v. Daggett*,

429 U.S. 78, 86-88 (1976) (holding that federal parolee imprisoned for a crime committed while

on parole is not  constitutionally entitled to a prompt parole revocation hearing when a parole

violator warrant is issued and lodged with the institution of his confinement but not served on

him).  To the extent that Thomas attempts to hold the District of Columbia liable under Section

1983 for the actions of its agents and employees, his attempts must fail.  A municipality cannot

be held liable vicariously under a *respondeat superior* theory.  *See City of Canton, Ohio v.

Harris*, 489 U.S. at 385 (citing *Monell*, 436 U.S. at 694).

    *B.  Claims Against ICE*

       Thomas faults ICE for relying on the unlawful 1995 detention as a basis for denying his

application for a Section 212(c) waiver of deportation.  *See* Compl. at 6-7, 15.  In order to

challenge the final deportation order, Thomas argues that "he must first be permitted to correct

his criminal record in D.C. which was the only basis for denying [him] relief under what was

[Section] 212(c)."  Pl.'s Opp'n to DHS Mot. at 3-4.  Thomas's ineligibility for a Section 212(c)

waiver is "based on the more than five years he was incarcerated, more than two of which were

due to the District's violation of Plaintiff's statutory and constitutional rights."  *Id.* at 8.  He

demands injunctive relief, whereby ICE is enjoined "from considering any time that plaintiff

spent in prison when plaintiff had been illegally reincarcerated by [District of Columbia officials] from August 7, 1995 until plaintiff's release from custody."  Compl. at 7.  Further, Thomas demands an order enjoining ICE "from deporting Thomas until this case can be fully adjudicated."  *Id.*

ICE construes Thomas's complaint as an attack on the final deportation order issued by the Immigration Judge in 2003, a matter over which this Court lacks subject matter jurisdiction. *See* DHS Mot. at 5-6.  Thomas insists that he neither is attacking the deportation proceedings, nor requesting review of the removal order, nor is bringing removal-related claims.  Pl.'s Opp'n to DHS Mot. at 9-10.  Instead, he maintains that ICE is a necessary party to this civil action because "he could be deported at any time and his claims thereby mooted."  *See id.* at 10.  Any due process violation would occur, then, if he were deprived of an opportunity to challenge the criminal record upon which ICE based the removal decision.  *See id.*  Even if this were true, the only relief he demands of ICE is injunctive relief to stay his deportation pending resolution of his claims against the District of Columbia.  *See id.*

In relevant part, the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, 302, deprives federal district courts of jurisdiction to review matters involving removal proceedings and the execution of removal orders.  *See* 8 U.S.C. § 1252(g).  This so-called "Exclusive jurisdiction" section provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act."

8 U.S.C. 1252(g).  As explained by Judge John D. Bates:

> There are three key components to this subsection. The first, "[e]xcept as provided in this section," refers to the remainder of § 1252, which generally permits judicial review of removal orders only via a petition for a review in the regional court of appeals.  *See* 8 U.S.C. §§ 1252(a)(1), (a)(5).  The second key phrase is the one that begins with "notwithstanding any other provision of law."  <u>This phrase makes it clear that aliens ordered removed cannot circumvent the exclusive judicial review in the courts of appeals by seeking relief in the district court via a petition for habeas corpus, a request for mandamus relief, or by invoking the All Writs Act.</u>  *See Sissoko v. Rocha*, 440 F.3d 1145, 1155 n. 14 (9th Cir. 2006) ("Section 106(a)(3) of the REAL ID Act added '(statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title' after 'notwithstanding any other provision of law.'").  The final phrase in § 1252(g) divests all courts, unless indicated elsewhere in the statute, of jurisdiction over a certain class of claims - those "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien . . .."

*Sadhvani v. Chertoff*, 460 F. Supp. 2d 114, 122 (D.D.C. 2006) (emphasis added) (dismissing petitions for a writ of habeas corpus and a writ of mandamus and motion for preliminary injunction to stay petitioner's deportation to Togo), *aff'd*, No. 06-5405, 2008 WL 2185344 (D.C. Cir. May 13, 2008) (per curiam).  Although 8 U.S.C. § 1252(g) "does not apply to all 'decisions or actions that may be part of the deportation process,'" the Supreme Court holds that "subsection 1252(g) applies to three discrete actions that the [Executive Branch] may take: [a] decision or action to commence proceedings, adjudicate cases, or execute removal orders."  *Nken v. Chertoff*, 559 F. Supp. 2d 32, 36 (D.D.C. 2008) (quoting *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (internal quotation marks omitted)).  Where, as here, Thomas's claim against ICE arises from the Attorney General's decision to adjudicate his case or to execute the removal order, the claim is "thus subject to the unambiguous

jurisdiction-stripping language of 8 U.S.C. § 1252(g)." *Sadhvani v. Chertoff*, 460 F. Supp. 2d at

122.  The REAL ID Act, then, "vests exclusive jurisdiction over [plaintiff's] request in the courts

of appeals . . .  and bars this Court from exercising any other method of judicial review over [his]

request for a stay, including habeas corpus, mandamus, and the All Writs Act." *Nken v. Chertoff*,

559 F. Supp. 2d at 37.

### III.  CONCLUSION

For the foregoing reasons, the motions to dismiss filed on behalf of the District of

Columbia and the Department of Homeland Security are granted.  Thomas is ordered to show

cause, if there be any, why this action as to the State of New York should not be dismissed for

want of prosecution pursuant to LCvR 83.23.[8]  An Order accompanies this Memorandum

Opinion.

HENRY H. KENNEDY, JR.
United States District Judge

---

[8]       It appears that the State of New York has not been properly served which perhaps accounts for the Clerk not entering a default.

13